## 75171. BANKS v. TODD.
(362 SE2d 410)

DEEN, Presiding Judge.

Gladys Kitching died on March 30, 1986, at the age of 83. At the time of her death, she was legally blind and hard of hearing, and had been so for some time. A deteriorating knee required that she use a "walker." Because of her disabilities, about three years prior to her death, she employed the defendant, Alma Todd, an old friend who had recently moved to town, to assist her. She became dependent on Todd for writing checks to pay bills and taxes, balancing her checkbook, reading her mail, driving her on errands, and other personal services. There was conflicting testimony as to whether Todd performed these services gratuitously or received a monthly fee.

Todd would accompany the decedent into the bank, standing by her side while she conducted her transactions. She accompanied Miss Kitching in 1984 to a consultation with her attorney for drawing up a

new will and living trust, and subsequently read the proposed new will. Todd, rather than the deceased, later phoned the attorney and informed him that Miss Kitching was not going to sign either the proposed will or the trust.

The existing will left Todd nothing. The proposed will left her only $2,000. Upon Miss Kitching's death, however, it was discovered that Todd had taken possession of certificates of deposit held with the decedent in joint ownership with right of survivorship, amounting to over $67,000. (The exact amount was disputed.) In addition, Todd had taken possession of a jointly owned savings certificate for $5,000. The defendant claims that the total of more than $72,000, which by virtue of the joint tenancy became hers upon Miss Kitching's death, was a gift. The plaintiff claims these funds were obtained by the defendant by the use of undue influence. Ms. Todd admits that all the funds in these accounts were furnished by Miss Kitching and that she herself deposited no funds of her own. Cf. OCGA § 7-1-816.

In his complaint, the plaintiff/executor asserted that Gladys Kitching, in a deteriorated state, came under the undue and overbearing influence of Todd; that Todd, through her special and confidential relationship with the deceased, took advantage of the situation and caused many of Miss Kitching's financial holdings to be placed in joint and survivor bank accounts. Furthermore, the plaintiff asserts that the trial court erred in granting the defendant's motion for summary judgment, contending that a genuine issue of material fact existed as to whether the decedent actually intended these sums to be gifts or whether the defendant unduly influenced the decedent to place the money in joint bank accounts so as to serve Todd's purposes; or whether the joint accounts were created simply to facilitate the handling of Miss Kitching's financial obligations in case she became incapacitated.

In her defense, Todd introduced the affidavits of three bank personnel, stating that the nature of the joint accounts was explained to Miss Kitching and that all of her questions were answered before she signed. In support of his contentions, the plaintiff adduced the depositions of relatives whom Miss Kitching had summoned to assist her with her affairs, and of two friends and neighbors to whom Miss Kitching had stated her dissatisfaction with Todd's management of her business. The trial court granted Todd's motion for summary judgment. *Held*:

Summary judgment was improperly granted. Genuine issues of material fact existed, and therefore the case should have gone to trial under OCGA § 9-11-56 (c): "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party

is entitled to a judgment as a matter of law."

According to the depositions and affidavits of Ms. Heath and Ms. Grammar, decedent's friends, and of Ms. Coral Lyles, her cousin, Miss Kitching had expressed a desire to find another person or institution to handle her finances. Miss Kitching had asked Ms. Heath to handle her money matters. Ms. Heath, unable to do so, recommended several other people, none of whom Miss Kitching employed. Ms. Grammar took the deceased to "the bank" and had her talk to a Ms. Harris about letting the bank handle her finances. Furthermore, about a month before her death, in January 1986, the deceased called Ms. Lyles to ask her what a trust fund was. During the conversation, Miss Kitching told Ms. Lyles that she had gone to the Georgia Railroad Bank and talked to a lady (Ms. Harris) about the trust, and that it sounded like something she would be interested in. In response to this information, Ms. Lyles arranged for herself and her husband to meet with Miss Kitching to review her records. Ms. Lyles phoned Todd, and Todd agreed to return Miss Kitching's records by 11:00 a.m. on February 24. Ms. Lyles states that Miss Kitching "seemed relieved that she'd finally have her records." However, when Mr. and Ms. Lyles arrived, Todd had failed to relinquish the records.

Todd alleges that she provided her services free of charge. However, Ms. Lyles states in her deposition that Miss Kitching told her Todd received $100 a month for her services, and that they concluded that the use of the bank to handle her finances would be no more expensive than Todd's services. Appellee's brief does not address this issue.

A material issue also exists as to Miss Kitching's intent for the use of her money. Both Ms. Lyles and Ms. Grammar contend that Miss Kitching was concerned about her health and that she wanted to make some definite plans should she become completely incapacitated. Ms. Lyles, in her deposition, states that the deceased had inquired if she had enough money to support herself, without going on welfare, in case she had to go into a nursing home. Someone who is worried about having enough money to survive without going on welfare is not a likely candidate to donate over $72,000 as a "gift" to someone whom she is trying to dismiss from employment.

Furthermore, the $2,000 legacy contradicts the defendant's assertion of a $72,000 gift. The $2,000 legacy would be inconsistent with (although of course would not necessarily preclude) an intention to leave Todd close to $72,000 in joint-and-survivor accounts.

It is undisputed that Miss Kitching was hard of hearing and legally blind. In fact, Ms. Grammar contends in her affidavit that Miss Kitching once gave her a $100 bill thinking that it was a $10 bill. Also, copies of the bank transactions clearly demonstrate that the deceased could not read what she was signing. On one document her

signature appears written across a paragraph of fine print of the document, rather than on the line provided for the signature.

Even if the bank personnel, as they contend in their affidavits, did explain each transaction to Miss Kitching prior to her signing each document, this does not necessarily mean that she intended for Todd to have the money in the accounts. As previously noted, Miss Kitching wanted to be cared for should she become completely disabled. The joint accounts would allow Todd to draw money to continue to pay Miss Kitching's bills, fulfilling her intent to be provided for, and would not necessarily establish a gift, especially to someone whose services she was seeking to terminate.

As appellee points out, appellant's pleadings fall short of establishing the deteriorated mental state requisite to a showing of undue influence. He does offer evidence tending towards making such a showing, however, and such evidence must be construed as creating a genuine issue of material fact.

Moreover, OCGA § 7-1-813 (a) allows for rebuttal of the presumption of the intent for a joint-and-survivor account to become the sole property of the surviving joint tenant. The standard of proof is "clear and convincing evidence" of a contrary intent.

Both of these issues — and a fortiori the issue of Miss Kitching's intent regarding the joint-and-survivor accounts — would appear to require a thorough weighing of the conflicting evidence by the trier of fact. As appellee acknowledges in her well-written brief, cases which primarily require factual determination are not usually amenable to summary adjudication. It is only "where the facts conclusively show by plain, palpable and undisputed evidence" that one or the other party is entitled to judgment that the case "properly may be resolved as a matter of law through the vehicle of summary judgment." *Fort v. Boone*, 166 Ga. App. 290, 292 (304 SE2d 465) (1983).

The trial court erred in granting summary judgment.

*Judgment reversed. Birdsong, C. J., and Pope, J., concur.*

DECIDED OCTOBER 15, 1987 —
REHEARING DENIED NOVEMBER 2, 1987 —

*Robert W. Hunter III, William H. Lumpkin*, for appellant.
*O. Palmour Hollis, Ziva Bruckner*, for appellee.